IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JABARI DOZIER,  #231703, | ) Civil Action No. 3:09-2309-JMC-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| LINDA SANDERS; | ) |
| LEROY CARTLEDGE; | ) |
| DENNIS PART; | ) |
| SHARON PATTERSON; | ) **REPORT AND RECOMMENDATION** |
| ANTHONY PADULA; | ) |
| LAURA MILLER; | ) |
| BRUCE OBERMAN; | ) |
| RONALD CRIBB; | ) |
| GLORIA DAVIS; | ) |
| NORBERTO GORDON; | ) |
| CLINTON MCCONICO; AND | ) |
| E. MIMS, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

    Plaintiff, Jabari Dozier, filed this action on September 8, 2009.[1]  He appears to allege that

Defendants violated his due process rights, used excessive force against him, subjected him to

unconstitutional conditions of confinement, denied him access to the courts, and retaliated against

him for filing lawsuits.  At the time of the alleged incidents, Plaintiff was an inmate of the South

Carolina Department of Corrections ("SCDC").  It appears that Plaintiff has now been released from

SCDC custody.  See Doc. 48 (Plaintiff's Change of Address). Defendants filed a motion for summary

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC.  Because these
are dispositive motions, the report and recommendation is entered for review by the court.

judgment on March 19, 2010. Because Plaintiff is proceeding pro se, he was advised on March 29, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a motion for default judgment as to Defendant Laura Miller ("Miller") on March 31, 2010. He filed a response in opposition to Defendants' motion for summary judgment on May 3, 2010. On August 18, 2010, Plaintiff filed a motion for summary judgment.[2] Defendants filed a response on September 2, 2010.

## MOTION FOR DEFAULT JUDGMENT

Plaintiff argues that default should be entered against Defendant Miller because she is "unable to be found." Plaintiff appears to have made his motion pursuant to Fed. R. Civ. P. 55.[3]

Plaintiff fails to show that he is entitled to entry of default under Rule 55 as he has not shown that Defendant Miller has failed to plead or otherwise defend. Miller (and the other Defendants) filed an answer on November 23, 2009 (See Doc. 12), and a motion for summary judgment on March 19, 2010. Thus, it is recommended that Plaintiff's motion for default be denied.

## MOTION FOR PRELIMINARY INJUNCTION

On June 3, 2010, Plaintiff filed a motion for a preliminary injunction. He requests that the Court order Defendants to stop limiting his access to legal writing materials and stop substantially

---

[2]In his motion, Plaintiff also argues that Defendants' motion for summary judgment should be denied.

[3]This Rule provides, in part:
When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
Fed. R. Civ. P. 55(a).

reducing the amount of legal materials requested. Defendants contend that Plaintiff's motion should be denied because Plaintiff receives an indigent package of legal materials each month which includes posted envelopes, blank paper, and a writing utensil; Plaintiff has not produced any evidence showing that the alleged denial of legal materials has caused him to miss a court deadline or caused this case to be dismissed; Plaintiff has filed, in a timely manner, numerous detailed documents containing factual and legal arguments; although SCDC is required to provide Plaintiff with adequate means to access the courts, it is not required to give Plaintiff unlimited and unfettered access; and Plaintiff has made no showing that his motion affects the public interest.

As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374-376 (2008).

As it appears that Plaintiff has been released from SCDC custody, his requests for preliminary injunctive relief are moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991)("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."); Magee v. Waters, 810 F.2d 451, 452 (4th Cir.1987)(prisoner's transfer moots his request for injunctive relief against conditions of confinement in facility from which he was transferred). Plaintiff also fails to show that he is entitled to relief under the factors set out in Winter. He is unlikely to be successful in the underlying dispute, as discussed below. Plaintiff also fails to show that he will suffer irreparable injury if he is not granted a preliminary injunction. Plaintiff does not dispute that he is supplied with

3

writing materials, but just appears to want more or unlimited supplies. He has not shown that he has been denied access to the courts. Plaintiff has been able to file numerous lengthy pleadings in this action, including his 136 page (including his memorandum, affidavit, and attachments) motion for summary judgment. Additionally, he has not shown that the balance of equities tips in his favor or that an injunction is in the public interest. Thus, it is recommended that his motion for a preliminary injunction be denied.

## DISCUSSION

Defendants contend that they are entitled to summary judgment because: (1) Plaintiff has failed to exhaust his administrative remedies; (2) Plaintiff fails to show that his due process rights were violated; (3) Defendants Padula, Cartledge, Sanders, Patterson, and Part are entitled to quasi-judicial immunity; (4) Plaintiff's claims concerning his disciplinary convictions must be dismissed pursuant to Heck v. Humphrey, 512 U.S. 477, 486-87; (5) Plaintiff's grievance claims have no foundation and must be dismissed; (6) Plaintiff fails to establish his excessive force claims; (7) Plaintiff's claims concerning being placed on control cell status and placement in SuperMax have no validity; (8) Plaintiff fails to state a valid cause of action against any Defendant for deficient conditions of confinement; (9) Plaintiff fails to show that his right of access to the courts has been denied or impeded; (10) Plaintiff has set forth no cause of action for emotional or mental injury; (11) Plaintiff's claims that agency policies have been violated does not rise to the level of a constitutional infirmity; (12) Plaintiff cannot prevail on his unfounded claims of retaliatory conduct; (13) Defendants are entitled to qualified immunity; (14) Defendants Padula and Cartledge cannot be held liable under the doctrine of respondeat superior; (15) Defendants, in their personal capacities, are not persons under § 1983; (16) Plaintiff is not entitled to injunctive relief; and (17) any state law claims

4

should be dismissed.  Plaintiff argues that his motion for summary judgment should be granted because "there exists no genuine issue of material fact and that I'm entitled to judgment as a matter of law."  Doc. 44 at 1.

      1.    <u>Exhaustion of Administrative Remedies</u>

      Defendants contend that Plaintiff's complaint should be dismissed because he failed to exhaust all of his administrative remedies.  Plaintiff contends that he exhausted some of his grievances because he took them through the SCDC grievance process.  Plaintiff does not appear to dispute that he did not exhaust his available remedies within SCDC as to his other grievances, but argues that exhaustion should be excused because he did not think that the rules for submission of these grievances were given to him (such as only writing on one side of a page) and he disagrees with the way his grievances were processed.

      Defendants fail to show that Plaintiff's claims relating to the issues raised in grievance numbers MCCI 0968-07, LCI 0292-08, LCI 2128-08, LCI 2129-08, LCI 2637-08, LCI 1917-08, and LCI 0318-08 should be dismissed because they have not shown that Plaintiff failed to exhaust his SCDC administrative remedies as to those claims.  Mary Coleman ("Coleman"), who is in charge of inmate grievances for the SCDC, provides that Plaintiff received final agency (SCDC) responses as to these grievances.  <u>See</u> Coleman Aff., Paras. 1, 3-7, 15, and 18.  Defendants appear to argue that Plaintiff did not exhaust these grievances because he did not fully exhaust his remedies with the South Carolina Administrative Law Court.   The fact that the South Carolina Legislature made a court available to prisoners who wanted to appeal a final decision by a jail facility denying a grievance, however, does not alter the federal Prison Litigation Reform Act by extending its administrative exhaustion requirements to include exhaustion in all state judicial forums.  In § 1983

5

matters, Congress only intended that "administrative remedies" be satisfied. <u>See</u> <u>e.g.</u>, <u>Pozo v.</u> <u>McCaughtry</u>, 286 F.3d 1022, 1024 (7th Cir. 2002)(exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court), <u>cert. denied</u>, 437 U.S. 949 (2002); <u>Brown v. Evans Corr. Inst. Med. Staff</u>, 2007 WL 1290359, at *4 (D.S.C. April 30, 2007).

Plaintiff, however, fails to show that he exhausted his remedies as to grievance numbers LCI 2017-08, LCI 2018-08, LCI 2398-08, LCI 2437-08, LCI 2604-08, LCI 3552-08, LCI 0031-09, and LCI 0032-09. Coleman Aff., Paras. 8-11, 13-14, 16-17, and 19. Thus, Plaintiff fails to show that he has exhausted his administrative remedies as to his claims concerning the alleged assaults that occurred on June 11, June 16, July 25, August 19, and November 13, 2008. <u>See</u> Coleman Aff., Paras. 8, 12, 13, and 14 and Attachments (copies of grievances). He also fails to show that he has exhausted his administrative remedies as to his placement in Cell Control Status on July 28, 2008, his placement in Supermax on November 13, 2008, his being able to clean his cell and receive cleaning supplies while in Supermax, and his ability to receive a haircut and a shave while in Supermax. <u>Id.</u>, Paras. 11, 16, 17, and 19. Thus, these claims should be dismissed for Plaintiff's failure to exhaust his administrative remedies.[4]

2.    <u>Due Process</u>

Plaintiff alleges that he was denied due process as his disciplinary hearings held September 12, 2007 ("Case 57"); January 14, 2008 ("Case 59"); June 27, 2008 ("Case 61" and "Case 62"); and August 12, 2008 ("Case 63") because he was not allowed to call certain witnesses, present

---

[4]Alternatively, it is recommended that summary judgment be granted to Defendants as to these claims, as discussed below.

evidence, and make a statement at some of the hearings. He also claims that Defendants failed to give him adequate explanations as to why he was found guilty. Defendants contend that Plaintiff was provided all of the procedural due process he was due.

Plaintiff's claims concerning his disciplinary proceedings are barred by Heck v. Humphrey, 512 U.S. 477 (1994)[5] and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); see also Kerr v. Orellana, 969 F. Supp. 357 (E.D.Va. 1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under Heck). He has not shown he successfully attacked any of these disciplinary hearing convictions. Plaintiff cannot maintain a § 1983 action, whether for restoration of good-time credits, monetary damages, or injunctive relief related to the hearing, if a judgment in his favor would necessarily imply the invalidity of the outcome of the disciplinary proceeding(s). Here, the awarding of damages and/or injunctive relief to Plaintiff would necessarily imply the invalidity of the outcome of his disciplinary hearing(s) and thus his claims are barred under Heck and Edwards.

Even if Plaintiff's due process claim are not barred, he fails to show that his rights were violated. Where a prison disciplinary hearing may result in the loss of good-time credit, Wolff v. McDonnell, 418 U.S. 539 (1974), holds that due process requires the following:

1.      Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

---

[5]The Supreme Court, in Heck v. Humphrey, 512 U.S. 477 (1994) determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based.

7

2.     Providing the prisoner a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action;

3.     Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4.     Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5.     Providing impartial fact finders.

Wolff, 418 U.S. at 563-576.  Due process in prison discipline decisions is satisfied if there is "some" evidence to show that the inmate committed the offense.  Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).  The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the board's decision.  Id. at 455-56.  This standard does not require an examination of the entire record, or a reweighing of the credibility of witnesses and other evidence.  Id.; see also Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990).

Plaintiff fails to show that his rights were violated as to Case 57 because the sanctions imposed did not include a loss of good time, but only suspension of privileges and disciplinary detention time.  The due process procedures required by Wolff and its progeny are not required unless the challenged discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995)(rejecting inmate's claim that either the Constitution or Hawaii statutes required due process for placement in disciplinary segregation).

8

Even if Plaintiff could show that these claims are not barred by <u>Heck</u> and that Case 57 involved the loss of good-time credits, he fails to show that he was denied due process. Plaintiff received written notice of the charges at least twenty-four hours prior to the hearings. Additionally, he was provided a written statement by the factfinder as to the evidence relied on and reasons for the disciplinary actions taken. Plaintiff received counsel substitute. Although Plaintiff appears to argue that he was denied witnesses and/or the right to present evidence at these hearings, the Disciplinary Hearing Officer ("DHO") in Case 57 determined that the requested witness was on duty in the control room and needed to remain as such and that this witness was irrelevant to the case. As to Case 59, there is no indication that Plaintiff called witnesses or gave proper notice to the DHO that he intended to call witnesses. As to Cases 61 and 62 it was noted that Plaintiff was advised that he had the right to submit a written statement and make a verbal statement, but there is no indiction that Plaintiff was prevented from doing so or wished to do so. In Case 63, the record indicates that Plaintiff failed to submit the proper paperwork requesting a witness and evidence to the DHO prior to the hearing. <u>See</u> Patterson Aff. and Attachments (Incident Reports and Disciplinary Report and Hearing Records).

3.    <u>Custody Placement</u>

Plaintiff appears to allege that his constitutional rights were violated because he was held on Close Custody Cell status for 72 hours on July 25, 2008, after he and his roommate allegedly flooded their cell, and because he was placed in SuperMax from November 23, 2008 until February 21, 2009. Defendants Sanders, Cartledge, Part, Patterson, Miller, and Davis contend that they are not responsible for Plaintiff's incarceration in Control Cell Status or his placement in a SuperMax Cell as this was done due to Plaintiff's ongoing disruptive and disobedient behavior. They argue that notwithstanding this, no constitutional rights in any context were violated by these placements.

As discussed above, Plaintiff fails to show that he has exhausted his administrative remedies as to these claims. Further, he fails to show that his constitutional rights were violated by these placements. Defendants provide that Plaintiff was placed in Control Cell Status after he and his roommate allegedly flooded their cell. This met the criteria under SCDC Policy/Procedure OP-22.12 to be placed in a Control Cell Status for up to 72 hours. He was given underwear, a blanket, and jumpsuit. See Ex. 6, Lt. Mims ("Mims") Aff. and Ex. 8, Bruce Oberman ("Oberman") Aff. Defendants provide that Plaintiff was placed in a SuperMax Cell on November 13, 2008, after administrators in LCI's SMU determined that Plaintiff's continued disruptive behavior, sexual misconduct, and hanging onto his cell flap warranted his placement there. See Mims Aff. with attached Incident Report, Oberman Aff.

Plaintiff fails to show a constitutional violation concerning his custody placement. Generally, prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). An inmate does not have a constitutional right to be confined in a particular location. See Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976). In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483. In Sandin, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 485. Under the analysis set forth in Sandin,

Plaintiff cannot show that he has a protected liberty interest in his security or custody classification. Id. at 483-85; see Backey v. South Carolina Dep't. of Corrections, 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996)[Table](allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); Joseph v. Gillespie, 73 F.3d 357, 1995 WL 756280 (4th Cir. December 21, 1995)[Table]("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); Reffritt v. Nixon, 917 F. Supp. 409, 412 (E.D.Va. 1996)(plaintiff has no protected interest in remaining in or being released into general population), aff'd, 121 F.3d 699 (4th Cir. 1997).

    4.    Equal Protection

        Plaintiff appears to allege that his equal protection rights were violated while he was in SuperMax because he was issued one less bar of soap a month and shampoo was distributed by a correctional officer pouring it into the inmate's hands while in the shower (rather than giving the inmate a bottle of shampoo). An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest." See Plyler v. Doe, 457 U.S. 202, 216-17 (1982). When a plaintiff is not a member of a suspect class he must prove that

11

the distinction between himself and other inmates was not reasonably related to some legitimate

penological purpose.  See Turner v. Safley, 482 U.S. 78, 89 (1987).  Here, Plaintiff, has not asserted

that he is a member of a suspect class.  Oberman states that inmates in SMU are given two ample bars

of soap at the beginning of each month.  He states that inmates are not given shampoo bottles because

of a history of inmates using them to throw waste or other materials.  Oberman Aff., Para. 15.  To

the extent that Plaintiff alleges that he was treated differently than other SMU inmates while he was

in Supermax, he admits that certain regulations are different due to security reasons.

     5.   Excessive Force

     Plaintiff appears to allege that he was subjected to excessive force on June 11, June

16, July 23, July 25, August 19, and November 13, 2008.  He fails, however, to show that he

exhausted his available SCDC administrative remedies as to any of these claims except the July 23,

2008 claim (see Coleman Aff., Para. 9-10 and 12-14).  Defendants contend that they are entitled to

summary judgment as to these claims because Plaintiff did not suffer more than de minimis injury

as to any of the alleged incidents and because he fails to show that they acted with a sufficiently

culpable state of mind.

    The "unnecessary and wanton infliction of pain," constitutes cruel and unusual punishment

forbidden by the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 5 (1992); Whitley v. Albers,

475 U.S. 312, 319(1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977).  To determine whether a

prison official has violated the Eighth Amendment, courts must analyze both subjective and objective

components.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Specifically, this analysis requires

"inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective

component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently

serious (objective component)." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996). "What is necessary to establish an unnecessary and wanton infliction of pain" with regard to each component "varies according to the nature of the alleged constitutional violation." Hudson, 503 U.S. at 5 (internal quotation marks omitted).

To satisfy the subjective component of an excessive force claim, a plaintiff must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. Whitley, 475 U.S. at 320-21; see also Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding as the subjective component, because "[w]hen prison officials maliciously and sadistically use force to cause harm' ... 'contemporary standards of decency are always violated ... whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' " Wilkins v. Gaddy, __ U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 7). The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Whitley, 475 U.S. at 321.

Plaintiff fails to show that the alleged uses of force constituted excessive force in violation of the Eighth Amendment. First, there was a necessity for an application of force in each incident.

13

Additionally, as to each incident, Plaintiff disregarded a direct order to comply with institutional rules and security mandates.  See Defendants' Exs. 3, 5, 6, and 7 (Affidavits of Sharon Patterson, Sgt. Gordon, Lt. Mims,  and Sgt. Price with corresponding incident and use of force reports).  Second, the relationship between the need for force and the use of force appears to be proportionate.  As to one incident, Plaintiff admits that he put his mattress up to the cell flap.  See Complaint at 15-16. In the November 13, 2008 incident, Plaintiff admits he grabbed the flap door after being asked to turn around to be handcuffed.  He states he then lowered the flap.  See Complaint at 18-19.

As to each incident, Plaintiff fails to show that he suffered anything more than de minimis injury.  He was examined by medical personnel after each incident.  After the June 11, 2008 incident, Plaintiff admitted that he did not get any chemical munitions in his eyes or face and he stated that he was "good."  He only had a small cut to his thumb for which he was given a bandage.  Defendants' Ex. 4 (Plaintiff's SCDC Medical Records), Encounters 196 and 197.  After the June 16, 2008 incident, it was noted that Plaintiff had no signs or symptoms of acute distress and he should flush his skin and eyes with water for 15 minutes to lessen irritation.  Id., Encounter 199.  After the July 23, 2008 incident, medical noted that Plaintiff's eyes were clear, his respiration was even and unlabored, his skin was free of irritation, and no treatment was needed.  Id., Encounter 202.  It was noted, after the July 25, 2008 incident, that Plaintiff was rinsing his skin with cool water, he had no shortness of breath, and he was instructed to continue to rinse his skin with cool water.  Id., Encounter 203.  After the August 19, 2008 incident, it was noted that Plaintiff had no signs of acute distress and he was instructed to flush his skin and eyes with water for 15 minutes.  He complained later that his back hurt, but medical noted Plaintiff ambulated without difficulty; he was able to squat, bend over, and stand back up without visible difficulty; and there was only some muscle tightness

that could be palpated in his middle back.  Id., Encounters 206-207.  Finally, after the November 13, 2008 incident, it was noted that Plaintiff had superficial abrasions to his right arm.  The areas were cleaned and covered with a bandage.  On December 5, 2008, Plaintiff complained of pain and swelling in his wrist with numbness in his thumb.  Medical noted that Plaintiff had a lump on his right wrist and bruising to the tip of his left thumb/fingernail.  An x-ray on December 15, 2008, however, revealed no acute process.  Id., Encounters 214, 217, 221, and 223.

Defendants reasonably perceived a threat to the safety of staff and prisoners as they perceived that Plaintiff was acting in a confrontational, disobedient, and provoking manner.  Defendants also appear to have made efforts to temper the severity of the force used.

6.    Conditions of Confinement

Plaintiff alleges that while he was in SuperMax he was refused recreation for up to three months, the temperature was too cold, he was not given back his blanket after it was sent out for cleaning, his cell was not cleaned and he was not given proper cleaning supplies, he was not given enough bars of soap or shampoo, and he was refused a haircut and a shave.  Defendants contend that Plaintiff fails to show that he was deprived of a basic need, Plaintiff fails to show anything more than de minimis pain or injury as a result of the alleged conditions, and he fails to show that Defendants knew of and disregarded an excessive risk to his health and safety.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined."  Helling v. McKinney, 509 U.S. 25, 31 (1993).  However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth

15

Amendment violation." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components.  First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency.  <u>Rhodes v. Chapman</u>, 452 U.S. 337 (1981).  Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind.  <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir.), <u>cert</u>. <u>denied</u>, 510 U.S. 949 (1993).  The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety.  <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). A plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. <u>Strickler</u>, 989 F.2d at 1380-81.

Plaintiff fails to establish a constitutional claim because he has not shown (or even alleged) any serious or significant physical or emotional injury resulting from the alleged conditions.  <u>See</u> <u>Strickler,</u> 989 F.2d at 1380-1381.  Plaintiff's medical records fail to indicate that Plaintiff complained of being cold or of any injuries associated with the temperature.  <u>See</u> Defendants' Ex. 4. Additionally, Plaintiff fails to show that any of the Defendants acted with a sufficiently culpable state of mind.   Plaintiff admits that he was issued a jacket and a blanket.  Oberman states that temperatures in the unit are kept between 67 and 72 degrees.  Oberman Aff., Para. 13.  Oberman states that cell cleaning and cleaning supplies are given out two to three times a week according to security status and mandates.  He also states that it is the policy of LCI's SMU to clean the cell of any inmate who does not clean his own cell to the satisfaction of prison administrators.  Oberman provides that haircuts and shavings are given to inmates according to security and staffing mandates.

Id., Para. 14.  He states that inmates are given two bars of soap a month and shampoo is not given

out in individual bottles because inmates have used the bottles to threaten security and order.  Id.,

Para. 15.  Plaintiff also admits he received medicated shampoo from medical staff, but did not like

the smell of it.

Defendants provide that inmates are given out-of-cell recreation unless they fail to comply

with institutional rules.  Plaintiff was provided with an in-cell exercise program.  Oberman Aff., Para.

6 and Attachment (In-Cell Exercise Program).    Plaintiff does not allege that he was unable to

exercise in his cell, and he fails to show that an inability to exercise out-of-cell for a short period of

time violated his Eighth Amendment rights.  See, e.g., Mitchell v. Rice, 954 F.2d 187, 193 (4th Cir.

1992)(although as a general rule the denial of out-of-cell exercise for an extended period violates the

Eighth  Amendment,  exceptions  may  be  made  under  exigent  circumstances  that  necessitate

constriction of these rights), cert. denied, 506 U.S. 905 (1992); see also Chavis v. Fairman, 51 F.3d

275, 1995 WL 156599 (7th Cir. 1995)[Table]("generally, even dramatic restrictions on outside

exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue)

so long as prisoners have ample opportunity to enjoy indoor activity"); Curtis v. Fairman, 1997 WL

159319 (N.D. Ill. March 24, 1997)(unpublished)(detainee in segregation who was denied out-of-cell

recreation for a twenty-nine day period failed to state a claim where he did not assert that he was

unable to exercise within the confines of his cell or that his health was threatened by the denial of

recreation).

    7.    Emotional Distress

Plaintiff claims that he should be allowed to recover for psychological pain.  There

is no federal constitutional right to be free from emotional distress, psychological stress, or mental

anguish, and, hence, there is no liability under § 1983 regarding such claims.  See Grandstaff v. City

of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas,

888 F.2d 899, 903 (1st Cir. 1989).  The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison
> or other correctional facility for mental or emotional injury suffered while in
> custody without a prior showing of physical injury.[6]

42 U.S.C. § 1997e(e).

8.    Retaliation

Plaintiff may be attempting to assert a claim for retaliation for filing grievances and/or

lawsuits.  He has, however, provided nothing to support his allegations.  Bare assertions of retaliation

do not establish a claim of constitutional dimensions.  See Adams v. Rice, 40 F.3d 72, 74 (4th Cir.

1994).  In order to state a claim for retaliation, an inmate must show that the alleged retaliation had

an adverse impact on the exercise of his constitutional rights.  Id. at 75.  "In the prison context, we

treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition

"retaliatory" in the sense that it responds to prisoner misconduct.'"  Cochran v. Morris, 73 F.3d 1310

(4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at 74.

9.    Access to the Courts

Plaintiff appears to allege that he was denied access to the courts because he was not

given an additional new pen and did not have access to a computer while he was in SMU.

---

[6]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the
issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not
be significant.  Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear
lasting for three days was de minimis and failed to meet the requisite physical injury to support a
claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind.
1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional
injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

Defendants argue that Plaintiff fails to show that he was denied access to the courts because he was given legal supplies, he was able to file numerous documents in this action and grievances at SCDC, Plaintiff was not denied the use of the institutional law library, and he fails to make any showing of any detriment from the alleged denial of a pen and computer.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the right of access to the courts not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

Oberman states that inmates can receive, upon request, up to 16 sheets of paper, mailing supplies, and one pen per month. If an inmate needs more he can purchase the supplies (or have his trust account debited if he is indigent). Oberman states that inmates have access to the law library as security permits and that although the SMU had a computer, it had to be removed due to budget cuts. Oberman Aff., Paras. 8 and 16. Plaintiff only makes a conclusory allegations and fails to show

19

that his access to the courts was violated because he has not shown any actual injury such as the late filing of a court document or the dismissal of an otherwise meritorious claim resulting from Defendants' alleged actions.  See Bounds v. Smith and Lewis v. Casey, supra.  Plaintiff has filed numerous lengthy pleadings in this action and was able to file numerous grievances at SCDC.

> 10.     Grievances/SCDC Policies

Defendants contend that Plaintiff's claims concerning the grievance system fail to rise to the level of a constitutional deprivation.  They also argue that his claims that Defendants have violated agency policies are not cognizable under § 1983.

To the extent that Plaintiff alleges claims concerning the processing of his grievances, his claims fail.  The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).  Even assuming that Defendant violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983.  See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994).

> 11.     Respondeat Superior

Defendants Padula, Cartledge, and Part argue that they should be dismissed because there is no respondeat superior or vicarious liability under § 1983 and Plaintiff has not affirmatively shown that they acted personally in the deprivation of his rights.  The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982).  Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from

a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendants Padula, Cartledge, and/or Part were personally responsible for any of the incidents or acted in any way other than a supervisory role. In his complaint, Plaintiff only alleges that Padula, Cartledge, and Part "allowed the violation to go unchecked" and gave a "less than meaningful response" or "rubber stamped" his grievances. Further, Plaintiff has not shown that these Defendants were deliberately indifferent to, or tacitly authorized, any of the actions or inactions of the SCDC employees. Thus, Plaintiff fails to show that Defendants Padula, Cartledge, and/or Part are liable on a theory of respondeat superior or supervisory liability.

12.    Immunity

Defendants appear to contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

22

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

13.    <u>State Law Claims</u>

It is unclear whether Plaintiff is attempting to assert any state law claims. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims would remain. Thus it is also recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any remaining state law claims be dismissed.

### CONCLUSION

Based on review of the record, it is recommended that Plaintiff's motion for default judgment (Doc. 31), motion for preliminary injunction (Doc. 39), and motion for summary judgment (Doc. 44) be **denied**. It is also recommended that Defendants' motion for summary judgment (Doc. 28) be **granted**.

_____
Joseph R. McCrorey
United States Magistrate Judge

February 4, 2011
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

23

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).